352 S.E.2d 116

**STATE of West Virginia**

v.

**Clarden ALLMAN.**

·No. 16298.

Supreme Court of Appeals of West Virginia.

Dec. 19, 1986.

Ernest M. Douglass, Parkersburg, for appellant.

Harry G. Dietzler, P.A., Parkersburg, for appellee.

BROTHERTON, Justice:

This is an appeal from a judgment of the Circuit Court of Wood County, where a jury found the appellant, Clarden Allman, guilty of six counts of first degree sexual assault. On review we find error in the trial court's refusal to provide Mr. Allman access to certain psychological records of the complainant, and reverse.

Mr. Allman is accused by his granddaughter, who is also his niece, of forcing her to have sexual intercourse with him on six separate occasions. The granddaughter was fourteen at the time of the first alleged rape and fifteen at the time of the other five. Five of the offenses were alleged to have occurred in Mr. Allman's home, the other at a social gathering at the granddaughter's house to which Mr. Allman was invited. The offenses were alleged to have occurred from May, 1981, to February, 1982. The granddaughter testified that she did not immediately tell anyone about the assaults because Mr. Allman told her that if she told anyone, he would kill her parents. Further, she claimed that she blocked the incidents out of her mind.

After his arrest, Mr. Allman requested that the granddaughter submit to a mental examination and that he be allowed to review her psychological records. The psychological records were delivered to the court, who reviewed the records *ex parte*. After this review the court ruled that the records were not discoverable and also ruled that the granddaughter would not have to submit to a psychological examination. The records were made a part of the record on appeal, however, and were re-

viewed by this Court. In our review we found admissions by the granddaughter which would partially exculpate Mr. Allman.[1]

Allman was tried before a jury in the Circuit Court of Wood County, West Virginia, on August 15 and 16, 1983. At the trial the granddaughter was the chief prosecution witness. Her testimony consisted of a convincing narrative detailing the six rapes. The jury found Mr. Allman guilty of six counts of sexual assault in the first degree and he was sentenced to six concurrent terms of ten years each.

Mr. Allman originally appealed to this Court in 1984, but voluntarily dismissed his appeal to take advantage of the light sentence of six concurrent terms of ten years each. The statute for first degree sexual assault, however, required a sentence of ten-to-twenty years. W.Va. Code § 61–8B–3 (1981). The probation board, therefore, would not consider the lighter sentence and instead treated him according to the statutorily prescribed sentence. After the probation board's decision, Mr. Allman petitioned this Court to have his appeal reinstated and we granted his petition. Mr. Allman, therefore, now appeals to this Court citing four assignments of error which we now address.

### I.

■ Mr. Allman argues that although the sentence imposed by the lower court may have been improper, the trial court waited longer than the 120 days allowed by Rule 35 of the West Virginia Rules of Criminal Procedure to correct the mistake. This issue was presented to us before in the case of *Cohn v. Ketchum*, 123 W.Va. 534, 17 S.E.2d 43 (1941). In *Cohn* the defendant received a one year sentence upon his conviction for a worthless check when the statute called for an indeterminate sentence of one-to-five years, and the court did not correct this error in the prescribed period. Nevertheless, we held that the trial court's sentence of one year

had no other effect than a recommendation to the director of probation and parole and that the pertinent statute should be read into and considered a part of the sentence imposed by the trial court. The appellant's sentence of ten years by the trial court instead of the statutorily prescribed ten-to-twenty year sentence was, therefore, merely a recommendation to the board of probation, which properly applied the correct sentence.

### II.

■ Mr. Allman next argues that his granddaughter was a voluntary social companion. The importance of this is indicated by syllabus point 2 of *State v. Wyer*, 173 W.Va. 720, 320 S.E.2d 92 (1984):

The legislature, by enactment of W.Va. Code, 61–8B–3(a)(1) (1976), relating to sexual assault in the first degree, created a distinction between a voluntary and a nonvoluntary social companion with regard to the elements of the crime of sexual assault in the first degree. Where the victim is a nonvoluntary social companion, the State need prove only that fact and that she was subjected to sexual intercourse by forcible compulsion. Where a voluntary social companion is involved, the State must in addition show either (1) the infliction of serious bodily injury on anyone or (2) the employment of a deadly weapon in the commission of the crime. Finally, where a voluntary social companion is involved and there is sexual intercourse by forcible compulsion but without either of the foregoing aggravating circumstances, the crime is then sexual assault in the second degree under W.Va.Code, 61–8B–4 (1976).

The granddaughter was neither seriously injured or threatened by a deadly weapon. Therefore, if we were to rule that she was the voluntary social companion of Mr. Allman, it would reduce his crime to that of sexual assault in the second degree.

---

1. The admissions, if believed by the jury, would lower the offense from six counts of sexual assault in the first degree under W.Va. Code § 61–8B–3 (1981) to six counts of sexual assault in the third degree under W.Va. Code § 61–8B–5 (1981).

We disagree, however, with Mr. Allman's contention. The evidence shows clearly in this case that the granddaughter was not the voluntary social companion of Mr. Allman within the meaning of W.Va.Code § 61–8B–3. The term was designed to cover a friendship or dating-type situation.[2] In this case, the granddaughter was not a social friend, but a ward placed in Mr. Allman's care, partially so that he could watch out for her and protect her from just the sort of incidents which the granddaughter alleged occurred. As her grandfather, he had some control over her actions. We will not allow a defendant to take advantage of the fact that he was appointed in a position of trust over a child to obtain a lesser sentence when he forcibly raped his ward.[3] We therefore conclude that, where a child is placed in the care of a supervisory adult, the child is not the voluntary social companion of the adult within the meaning of W.Va.Code § 61–8B–3 (1981).

### III.

■ Mr. Allman further contends that he was prejudiced by the State's delay to timely prosecute because he was not indicted until the January, 1983, term of the grand jury and the last offense occurred in February, 1982. The defendant, therefore, complains that the delay denied him an effective defense and impaired his right to a fair trial. We disagree. "The general rule is that where there is a delay between the commission of the crime and the return of the indictment or the arrest of the defendant, the burden rests initially upon the defendant to demonstrate how such delay

has prejudiced his case if such delay is not *prima facie* excessive." Syl. pt. 1, *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982). The eleven-month delay in this case was not so long as to be prima facie excessive. Further, the defendant did not show that the delay had impaired his ability to present his case. We therefore find this assignment of error to be meritless.

### IV.

■ One area which does give us some concern is the trial court's review of the granddaughter's psychiatric records. This Court has "recognized that there may be occasions where evidence of psychiatric disability may be introduced when it affects the credibility of the material witness' testimony in a criminal case. Courts have generally required that before such psychiatric disorder can be shown to impeach a witness' testimony, there must be a showing that the disorder affects the credibility of the witness and that the expert has had a sufficient opportunity to make the diagnosis of psychiatric disorder." *State v. Harman,* 165 W.Va. 494, 506, 270 S.E.2d 146, 154 (1980). (Footnote and citations omitted). In this case, the defendant had no such opportunity to make a showing that the witness' disorder affected her credibility and that the psychiatrist had a sufficient opportunity to make a diagnosis, because he was not provided with a copy of the records. We therefore order that upon remand a copy of the granddaughter's psychiatric records should be provided to the defendant's counsel and an *in camera* hearing held as to relevancy.[4] In the hear-

---

2. We determine this from the words "social" and "voluntary." Social denotes a friendship situation and voluntary shows that neither can be exercising control over the other.

3. No West Virginia case is on point, but a Delaware decision on similar facts supports our holding. In *State v. Hamilton,* 501 A.2d 778 (Del.Super.Ct.1985), a Delaware court examined a case where the victim of a rape was the nine-year-old daughter of the defendant. The court in that case decided that the victim was not a "voluntary social companion" on the occasion of the crime. *See* 501 A.2d at 779. The court found it important that the child's presence was not totally a product of rational intellect and

free will. The parent was free to use reasonable force to return the child to the place of residence. *Id.*

4. We note that this information would be deemed confidential under W.Va. Code § 27–3–1(a) (1986), which provides as follows:

Communications and information obtained in the course of treatment or evaluation of any client or patient shall be deemed to be "confidential information" and shall include the fact that a person is or has been a client or patient, information transmitted by a patient or client or family thereof for purposes relating to diagnosis or treatment, information transmitted by persons participating in the accom-

ing, the defense counsel shall designate what parts of the record he believes to be relevant. The court shall then accept arguments as to the relevancy from both sides, and a record shall be made of all proceedings. All material found to be irrelevant shall be sealed, but kept with the record.

For the above reasons, the decision of the Circuit Court of Wood County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

plishment of the objectives of diagnosis or treatment, all diagnoses [sic] or opinions formed regarding a client's or patient's physical, mental or emotional condition; any advice, instructions or prescriptions issued in the course of diagnosis or treatment, and any record or characterization of the matters hereinbefore described. It does not include information which does not identify a client or patient, information from which a person acquainted with a client or patient would not recognize such client or patient, and uncoded information from which there is no possible means to identify a client or patient.

Nevertheless, section (b) of the statute provides:

"Confidential information may be disclosed ... [p]ursuant to an order of any court based upon a finding that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section ...

In this case we find that the relevancy of these records outweighs the importance of maintaining confidentiality and therefore hold that the statute would not block disclosure.